The Stamford Bank *against* Ferris:

### IN ERROR.

Where bank shares are attached, when the cashier of the bank is absent therefrom, if no copy of the writ and endorsement thereon be left at the bankinghouse, no lien on such shares will be acquired by the process.

Shares of stock in an incorporated company being distinguishable from each other, only by their respective owners, a description specifying the number of shares and the owner, is sufficient.

Therefore, where *A*, in a suit brought by him against *B*, attached twenty shares of the capital stock of the *Stamford Bank*, as the proper estate of *B*, who was then the owner of that number of shares in said bank; and *A* having recovered judgment in such suit, had his execution levied on twenty shares of the stock of the *Stamford Bank*, which the officer in his return described as "the property of the execution debtor, and having been attached by virtue of the original process between the parties;" it was held, that the description was sufficient, though the shares attached, at the time of the levy, stood on the books of the bank, in the name of another person.

Where the execution creditors were described in an execution levied on bank shares, as well as in the judgment on which it issued, as "*A* and *W*, partners under the firm of *A & W*," and in the copy left with the cashier, they were described as "*A* and *W*, partners, under the firm of *A &* ;" it was held, that the variance was immaterial.

Where *B*, being liable to the *Stamford Bank*, as indorser of two promissory notes held by that institution, as security for such liability, transferred twenty shares of its stock, on the books of the bank, to "*E. Hill*, cashier," who was in fact the cashier, at that time; and it appeared that assignments and transfers of the stock of this bank, to the bank, or in pledge to it, or as security for debts and liabilities to it, were invariably, by the usage of the bank, made in the same manner as the transfer in question; it was held, that such transfer vested the legal title to the shares so transferred, not in *Hill*, in his own right, but in the bank. [Two judges dissenting.]

The liability of a person as the indorser of a promissory note, to the holder, is a sufficient consideration to support a transfer of bank shares, by the former, as security to the latter for such liability.

Where a transfer of bank shares was made by *B*, as claimed by the bank, to secure his liability to the bank, as indorser of certain notes held by the bank; and the bank, to prove the purpose and consideration of such transfer, offered the testimony of their cashier, showing, that upon his appointment as cashier, after the transfer, he found said notes, with the indorsement of *B* thereon, among the papers of the bank; it was held, that this testimony was admissible to show that the transfer was made for the purpose and upon the consideration claimed by the bank.

Where a party claiming that a transfer of bank shares made by *B*, was void under the statute of 1828 against fraudulent conveyances, offered in evidence an attachment in fact of those shares, (though by reason of a defect in the service, it created no lien,) and a transfer thereof, while they were under such attachment, to prove, that the transfer was made while *B* was in failing cir-

cumstances and with a view to his insolvency; it was held, that such evidence was admissible for the purpose for which it was offered.

Where there are two or more counts in the declaration, and the evidence introduced is applicable to each, the plaintiff, if entitled to recover at all, is entitled to a general verdict on all the counts, although, if but one cause of action be shown, he can recover damages for that one only.

THIS was an action of *assumpsit*, to recover certain dividends on twenty shares of the stock of *The Stamford Bank*, brought by *Joshua B. Ferris* Esq. against that institution, before a justice of the peace, and appealed to the county court. There were three counts in the declaration; the two first being special, and the third a general count for money had and received by the defendants to the plaintiff's use.

The defendants pleaded the general issue; on which the cause was tried before the county court of *Fairfield* county, *December* term, 1844.

The plaintiff claimed title to the twenty shares of stock mentioned in the declaration, in this manner. On the 25th of *May* 1842, *Richard I. Richards* was the owner of twenty shares of the capital stock of said bank, which stood in his name on the books of the bank. On that day, *John D. Abbott* and *James Wilcomb*, described in the writ as " of the city and state of *New-York*, partners under the firm of *Abbott & Wilcomb*," attached, " as the proper estate of the defendant, twenty shares of the capital stock of the *Stamford Bank*," in a suit by them brought against *Richards*. The return of the officer stated, that he left a true and attested copy of the writ "with *John W. Leeds* Esq. president and acting cashier of said bank; *Edward Hill*, the regular cashier of said bank, being absent and out of this state;" but the return did not state, that any copy was left at the banking-house, or at the place where the corporation transact their business. The plaintiffs in the suit afterwards recovered judgment against *Richards*, for the sum of 292 dollars, 60 cents, damages and costs. An execution issued on this judgment was, on the 21st of *January*, 1843, levied, as the return stated, " on twenty shares of the capital stock of the *Stamford Bank*, said stock being the property of the execution debtor, and having been attached by virtue of the original process between the parties." The return of the officer, stated, that he had left with *Edward Hill*, cashier of said bank, an attested copy of the

execution and of the endorsement of his doings thereon. Between the copy referred to and the original execution there was this variance. The latter followed the judgment and the writ of attachment, in the description of the creditors; in the former, the description was as follows—" *John D. Abbott* and *James Wilcomb,* both of the city and state of *New-York,* partners in company in said city, under the firm of *Abbott & .*" The shares levied upon were sold at the post, to the plaintiff, for twelve dollars each, he being the highest bidder; and the avails were endorsed on the execution, in part satisfaction thereof. The officer, immediately thereafter, made and delivered to the plaintiff a bill of sale, conveying to him said bank shares.

The plaintiff, in support of his claim, offered in evidence authenticated copies of the writ of attachment, the officer's return of service, the record of the judgment, the execution, the officer's return thereon, and his bill of sale to the plaintiff: to the admission of which the defendants objected, claiming that the officer's return on the writ of attachment showed no legal attachment, because it did not state, that any copy was left at the banking-house of the *Stamford Bank,* and because it contained no sufficient description or designation of the shares attached ; that the return on the execution did not sufficiently describe or designate the shares of stock levied upon and sold ; and that the proceedings of the officer were irregular and ineffectual to transfer a title, by reason of said variance.

The defendants claimed and offered evidence to prove, that on the 31st of *May,* 1842, *Richards* assigned and transferred said twenty shares of stock, upon the books of the bank, to *Edward Hill,* the cashier of the bank, by an absolute transfer, in the usual form, made pursuant to a power of attorney given by *Richards* to *Hill,* dated *April,* 29th, 1842. The execution of the power and the transfer, and the official character of *Hill* as cashier, at the time of the transfer, were admitted. It was also admitted, that when the execution was levied, said twenty shares of stock stood on the books of the bank in name of " *E. Hill,* cashier." The defendants claimed, that the transfer of the stock to " *E. Hill,* cashier," was made by *Richards,* for the sole purpose of securing the bank for his liability as indorser of two promissory notes,

*Fairfield,* June, 1845.

Stamford Bank *v.* Ferris.

held by the bank, one for 261 dollars, 40 cents, made by *John Barber,* dated *March* 21st, 1842, and payable three months after date, the other for 123 dollars, 79 cents, made by said *Barber,* dated *April,* 20th, 1842, and payable three months after date ; that these notes had never been paid, but were still justly due to the bank ; and that *Richards,* at the time of making the transfer, was, and ever since has been, liable as indorser. The plaintiff denied that the transfer was made for the purpose of securing such indorsements, or for any sufficient consideration whatever ; but admitted the other facts so claimed by the defendants.

The defendants, to prove the consideration of the transfer, as claimed by them, offered *Samuel K. Satterlee,* the present cashier of the bank, as a witness, who testified, that upon his appointment as cashier, long after the transfer was made, he found said notes, with the indorsement of *Richards* thereon, among the papers of the bank : and this was the only evidence offered to show, that the transfer was made for the purpose and upon the consideration claimed by the defendants.

To this testimony of *Satterlee,* for the purpose for which it was offered, the plaintiff objected, and prayed the court to charge the jury, that it was inadmissible, and that there was no evidence before them to show any consideration whatever for the transfer.

The defendants claimed and offered evidence to prove, that assignments and transfers of the stock of the bank, to the bank, or in pledge to it, or for its security for debts due and liabilities to it, were, invariably and by the usage of the bank, made in the same form as the transfer in question. To this evidence the plaintiff objected, and prayed the court to charge the jury, that it was wholly inadmissible to affect the transfer.

The plaintiff claimed and asked the court to instruct the jury, that the transfer passed the legal title to said twenty shares to *Hill,* in his own right ; and that if it was so made for the benefit of the bank, by *Richards,* in failing circumstances, and with a view to his insolvency, it was void as against said execution, by the statute against fraudulent conveyances passed in 1828. And the plaintiff, to prove that *Richards* made the transfer, while in failing circumstances, and with a

view to his insolvency, offered in evidence the return on said writ, and the transfer so made; but he offered no other evidence to prove these facts.

*Fairfield,*
June, 1845.

Stamford Bank
*v.*
Ferris.

To this evidence the defendants objected, and requested the court to charge the jury, that the transfer so made by *Richards,* under such circumstances, and for the purposes claimed by the defendants, vested a title to said twenty shares in the bank; but if it did not, but vested, as claimed by the plaintiff, such title in *Hill,* it was a valid title in him, for the security of the bank, and was not void, by reason of said statute, even if found to be made by *Richards,* while in failing circumstances and in view of insolvency.

The defendants further claimed and requested the court to charge the jury, that the return on said writ, and the transfer so made, were not admissible to prove said facts; and that the court should instruct the jury, that there was no evidence whatever, to prove, that the transfer was made by *Richards,* while in failing circumstances and with a view to his insolvency.

The plaintiff offered evidence, that a dividend was declared by said bank, on the 4th day of *September,* 1843, payable on the 6th day of that month, of one dollar on each share of the capital stock; and that the plaintiff demanded said dividend on said twenty shares, on or about the 1st day of *November,* 1843, of the defendants. The defendants objected to this evidence, as applicable to the third count in the declaration; but the court admitted it.

The defendants then claimed, that the court should charge the jury, that inasmuch as the plaintiff presented but one cause of action, the defendants were entitled to a verdict on at least all but one count in the declaration; and that the plaintiff was bound to elect on which count he would proceed; but the court decided and charged the jury, that inasmuch as the evidence was admissible on each count in the declaration, the plaintiff, if he was entitled to recover at all, was entitled to a general verdict on all the counts, although he could recover only the amount of the dividend on the twenty shares proved by him to have been declared, with interest from the time of the demand.

As to the attachment by *Abbott & Wilcomb,* the court decided and charged the jury, that no lien on said twenty

shares was acquired thereby, and that the return of the officer thereon was not admissible in evidence to prove such lien ; but the court decided and charged the jury, that the return on said execution was admissible in evidence, the objection of the defendants thereto notwithstanding, and was especially admissible in connexion with the return on the original writ ; and further, that the variance between the execution and the copy thereof so left with said cashier, was an immaterial variance ; and that the execution and the proceedings under it, were sufficient to vest the plaintiff with a title to said twenty shares, unless they had been, by *Richards*, before the levy of the execution, legally transferred.

The court further decided, and charged the jury, that the transfer, in order to prevent the plaintiff from acquiring a title to said shares of stock, by the levy of, and proceedings under, said execution, must have been made for a valuable consideration ; that the liablity of *Richards* to the bank as indorser on said notes, was a sufficient consideration to support the transfer ; but that to constitute the transfer valid, as against the plaintiff, the jury must find from the evidence in the cause, that the transfer was made for the purpose of securing the bank for the liability of *Richards* as indorser on said notes, as claimed by the defendants, that being the only consideration for the transfer claimed by the defendants ; and that the testimony of *Satterlee* was admissible for the purpose for which it was offered, and might be taken into consideration by the jury.

The court further decided, and charged the jury, that the transfer did not vest a title to said twenty shares in the bank, but vested such title in *Hill*, notwithstanding the usage of the bank to take transfers of stock in this form, as claimed by the defendants ; and that if the jury should find, that the transfer was made by *Richards*, in failing circumstances, and with a view to his insolvency, and in trust for the benefit of the bank, it would be void, by the statute of 1828, as against said execution ; and that the jury, on this point, might take into their consideration the service of the writ of attachment, and the fact that the transfer was made while said shares were under the attachment ; but that the jury could not conjecture, but must find from the evidence in the cause, that the transfer was made by *Richards*, while in failing circumstan-

ces, and with a view to his insolvency, before they could find the transfer void by said statute.

The jury thereupon rendered a general verdict in favour of the plaintiff.

The defendants, believing that the court in so admitting the evidence objected to by them, and in so charging the jury, contrary to the claims made by them, erred and mistook the law, filed a bill of exceptions; and thereupon they brought a writ of error in the superior court; which was reserved for the advice of this court as to what judgment ought to be rendered thereon.

*Hawley,* for the plaintiffs in error, contended, 1. That the levy of the execution was ineffectual to transfer a title, for want of a sufficient description or designation of the property levied on. In the first place, a particular description or designation of the property levied on, is necessary. 1 *Sw. Dig.* 122. *Jackson* d. *Livingston* & al. v. *De Lancey* & al. 11 *Johns. R.* 365. S. C. in err. 13 *Johns. R.* 537. *Jackson* d. *Carman* & al. v. *Rosevelt,* 13 *Johns. R.* 97. *Eells* v. *Day,* 4 *Conn. R.* 96. Secondly, there is nothing in the officer's return on this execution, showing that the particular stock, which is the subject of this action, was taken and sold. The return speaks of it as the property of *Richards,* the execution debtor; but no stock then stood in his name. Thirdly, the return is not helped, by the reference therein to the attachment. In legal contemplation, there was no attachment; and so the court decided. There was, it is true, a return in fact on the writ; but the reference is not to the return. And if it had been, the return on the writ is as defective in point of description as the return on the execution.

2. That the variance between the execution and the copy left with the cashier, was fatal. To transfer a title by execution, every thing must be conformable to the statute. But the statute requires a *true* copy to be left. *Stat.* 65. (ed. 1838.) The copy must at least be so like the original, that the latter, if like the copy, would be good. But an execution like the copy in question, would not be supported by the judgment; for it is not true, that the plaintiffs in that suit ever recovered judgment, *by such a designation.* Whether the whole of the designation might, or might not, have been

omitted in the original writ, judgment or execution, is immaterial ; for this is matter of *description*, and must be *strictly* proved : it is a question of *identity*. It is clear that a similar variance between a writ and a copy in service, would be material ; for the same testimony would not sustain the allegations of both. 2 *Saund. Pl. & Ev.* 418. [340.] 420. [342, 3.] 3 *Stark. Ev.* 1529. 1530, 1. 1533. 1542, 3, 4, 5, 6. *Cutler* v. *Wadsworth,* 7 *Conn. R.* 6. 11. *Turner* v. *Eyles,* 3 *Bos. & Pul.* 456. *Stiles* v. *Rawlins,* 5 *Esp. Ca.* 133. *Baynes* v. *Forrest,* 2 *Stra.* 892. *Bristow* v. *Wright, Doug.* 642. *Read* v. *Borradaile,* 5 *Esp. Ca.* 223. *Vail* v. *Smith,* 4 *Cowen* 71. *Edwards* v. *Lucas,* 5 *B. & Cres.* 339. (11 *E. C. L.* 250.) *The United States* v. *Neal,* 1 *Gallis.* 389. *Boyden* v. *Hastings,* 17 *Pick.* 200. *Palmer* v. *Palmer,* 2 *Conn. R.* 462.

3. That the transfer by *Richards,* to *Hill,* the cashier, vested a title in *the bank :* in the first place, independently of any usage ; but any rate, in connexion with the usage shown. The intention was to secure the bank. *Hill* was acting in his official capacity, for the bank. *Croyden Hospital* v. *Farley,* 6 *Taun.* 467. *Attorney General* ex relat. *Clark* v. *Mayor &c. of Rye,* 7 *Taun.* 546. Case of the *Mayor &c. of Lynne Regis,* 10 *Co.* 122. Case of the *Chancellor &c. of the University of Oxford,* 10 *Co.* 53. 57, 8. *Dr. Ayray's* case, 11 *Co.* 18.

4. That if the legal title was not vested in the bank, still the transfer was not void by the statute of 1828. It is not a case within the meaning of that statute. The mischiefs which it was intended to remedy, would have no place here. It is like a mortgage to a town treasurer, or a society's committee. *Bates* v. *Coe,* 10 *Conn. R.* 280. 293. 295.

5. That the charge was wrong as to the evidence of insolvency, &c.; for it advanced the principle, that a nugatory attempt to attach certain property, (and that not shown to be the whole, or even a material part, of the owner's estate,) and a subsequent transfer of that property, for a valuable consideration, are facts, which, of themselves, and without any other evidence whatever, authorize a jury to find, that the owner of the property was in failing circumstances, and made that very transfer in view of insolvency.

6. That the charge in regard to the necessity of a consid-

*Fairfield,*
*June, 1845.*

Stamford Bank
*v.*
Ferris.

eration, was wrong ; as no case was presented calling for such a charge.

7. That the plaintiff below was not entitled to recover on the third count, if he was entitled to a verdict on one count only ; as the defendants called for separate verdicts.

*Bissell* and *Dutton*, for the defendant in error, contended.
1. That the officer's return on the execution sufficiently designated the shares taken. The statute does not require more particularity. Shares of stock have no ear-mark, and cannot be otherwise described than as shares of the defendant, or execution debtor. The shares in question are designated, by reference to the return on the attachment, as the shares which were attached by that process ; and it appears, that *Richards* was then the owner of twenty shares. It is equivalent to saying, that the twenty shares, which, at the time of the attachment, stood in the name of the defendant, are the shares levied upon.

2. That the supposed variance between the execution and the copy left, was immaterial. The plaintiffs were correctly named. When persons sue, describing themselves as partners, they do not sue in a different capacity. If this part of the description were wholly omitted in the writ, it would not render it abateable. Besides, in this case, there is obviously a blank, and the context supplies the word omitted. The word "*Wilcomb*" is necessarily implied. *Bigelow* v. *Benedict,* 6 *Conn. R.* 116. 2 *Saund. Pl. & Ev.* 340, 1, 2, 3. *Purcel* v. *Macnamara,* 9 *East,* 157. 160. *Philips* v. *Shaw,* 4 *B. & Ald.* 435. (6 *E. C. L.* 477.) 3 *Stark. Ev.* 1542.

3. That the transfer vested the title in *Hill.* The word "cashier" was merely descriptive of the person ; and no usage of the bank could alter the legal effect. It constituted him trustee for the bank. *The New-England Marine Insurance Company* v. *Chandler,* 16 *Mass. R.* 275. If the title vested in the bank, the transfer would be void. *Ayres* v. *Husted,* 15 *Conn. R.* 504.

4. That the transfer to *Hill,* for the benefit of the bank, when *Richards* was in failing circumstances, was directly within the statute of 1828, both in the letter and spirit.

5. That the evidence regarding the attachment and transfer, was clearly admissible, to prove that *Richards* was in

failing circumstances, and that the transfer was made with a view to his insolvency. 1 *Sw. Dig.* 334. If a hundred suits would prove a failure, one would tend to prove it. *Richards,* so far as any thing is shown, made over all that he had, to secure a particular note, while another suit was pending. The objection goes to the *sufficiency* of the evidence; but this cannot be tried here. *Picket* v. *Allen,* 10 *Conn. R.* 146.

6. That the charge that the assignment of *Richards* to *Hill* must have been made for a valuable consideration, was correct; otherwise, as a gift, it would have been void against the creditors of *Richards.*

7. That the evidence regarding dividends, was properly admitted under the third count. Dividends on shares in a corporation may be recovered from the corporation, as money had and received to the use of the person entitled thereto as owner of the shares. *Nesmith* v. *Washington Bank,* 6 *Pick.* 324. *Ellis* v. *Essex Merrimack Bridge,* 2 *Pick.* 243. *Eagle Bank* v. *Smith,* 5 *Conn. R.* 71.

8. That the defendants below had no right to claim separate verdicts on the several counts. The usual practice is, to give a general verdict, when the same evidence supports all the counts. *Wolcott* v. *Coleman,* 2 *Conn. R.* 324. The defendants have no ground of complaint; for the plaintiff could not have a general verdict, unless he proved all the counts. The rule of damages was the same in all.

CHURCH, J. Most of the objections to a recovery by the plaintiff below and to the ruling of the county court, we unanimously believe to be without legal support.

The stock levied upon, was well described, by the officer, in his return upon the execution. He describes it as twenty shares of the capital stock of the *Stamford Bank,* being the property of the debtor in the execution, and as having been attached by virtue of the original writ of attachment in the suit. Shares of stock are owned by different persons, and thus only are distinguishable from each other; as the stock of *A* and the stock of *B.* A share is a definite proportion of the capital. *Richards,* the debtor, in this case, owned twenty of these shares; thus showing his interest in the capi-

tal stock of the bank ; and this was attached as his, and could not be mistaken for the interest of any other person.

*Fairfield*,
June, 1845.

Stamford Bank
*v.*
Ferris.

The objection arising from a supposed variance between the original execution and the copy left with *Hill*, is equally groundless. No one can fail to see, that the omission of the name of *Wilcomb*, in the description of the firm of *Abbott & Wilcomb*, was a mere clerical mistake—the names of both these copartners being set out as the party plaintiffs, in whose favour the judgment was recovered.

The other errors assigned, with the exception of the one we are now to notice, we think are not sustained by sufficient causes ; and in regard to them, we sanction the opinion of the court below.

On the trial in the county court, the defendants there, claimed, that the assignment of the stock vested the title to it in the bank, and not in *Edward Hill ;* and that assignments and transfers of the stock of said bank to the bank, or in pledge and security for debts due and liabilities to said bank, were invariably, by the common usage of this bank, made in the same manner as the transfer in question. But the court decided, and charged the jury, that said transfer vested the title of the stock, so assigned, in *Hill*, notwithstanding the form of this assignment and the contrary usage of the bank. Herein a majority of us believe, that the county court mistook the law. Cases, involving the powers and liabilities of agents and the responsibility of principals, are numerous, and many of them irreconcilable ; and in tracing the progress of the law on this subject, there is to be discovered in the earlier decisions a very obvious departure from common sense. We shall not now attempt to recall or review the various doctrines alluded to. The question here is, not whether *Hill*, the cashier and agent of the bank, has done an act which binds either himself or the bank ; but whether, as a matter of law, or of legal construction of the power of attorney and the assignment made under it, that assignment was a mere private affair between *Richards* and *Hill*, or whether it was, or might have been shown to be, a transfer, by *Richards*, of his stock to the bank ?

Cashiers of banks are their known agents, and with whom the business public most generally communicate ; and in regard to debts due to banks and the securities therefor, these agents

*Fairfield,*
*June, 1845.*

*Stamford Bank*
*v.*
*Ferris.*

must, of necessity, exercise a very considerable extent of power ; and general usage, we believe, has conformed to this necessity. *Fleckner* v. *Bank of the United States*, 8 *Wheat.* 338. If a third person transact business with the cashier of a bank, in his character and capacity of cashier, and such business as falls within the scope of his powers ; and especially, as was said by *Story*, J., in the case above referred to, if done in the ordinary course of the business usually confided to such an officer, it may well be deemed *prima facie* evidence, that such business fell within the limits of his duty, and that he acted for the bank, and not for himself. So a trustee, when acting in the character of trustee, is presumed to act for the benefit of the trust. So of an executor, &c. And this presumption is strengthened, when the act done is adopted by the bank, and never claimed by any of the acting parties as an individual transaction. *Johnson* v. *Blackman*, 11 *Conn. R.* 342. We think that *Hill*, after receiving this stock, in his capacity of cashier of the *Stamford Bank*, would not be permitted to claim it as his own, against the bank. In the case of *Bickerton* v. *Burrell*, 5 *M. & S.* 383. it is said by Lord *Ellenborough*, that, "where a man assigns to himself the character of agent to another whom he names, I am not aware that the law will permit him to shift his situation, and to declare himself the principal, and the other to be a mere creature of straw. That I believe has never yet been attempted." *Richards* does not claim that this transfer was made to *Hill*. *Hill* does not, and cannot claim this. As between all the parties connected with this assignment, it must, therefore, be considered as a valid assignment to the bank. This being so, it is valid and effective against every body else ; because no fraud nor other illegality is seen to exist, by reason of which the creditors of *Richards* may claim that it is void as to them. *Story on Agency*, 507.

The foregoing opinion, we think, receives confirmation from the supreme court of the *United States*, in the case of *The Mechanics' Bank* v. *The Bank of Columbia*, 5 *Wheat.* 326. A check had been drawn by the cashier of a bank, without any official addition to his name or signature, but it was numbered and dated as a bank check. This, the court say, led to the belief that it was a corporate, and not an individual, transaction. And it was conceded, that if the word

*Fairfield,*
*June, 1845.*

Stamford Bank
*v.*
Ferris.

*cashier* had been affixed to the signature, it would have stamped the transaction as corporate, with certainty. So in *Bayley* & al. v. *The Onondaga Ins. Co.* 6 *Hill,* 476. a bond had been made to the directors of the company, and it was adjudged to be the bond of the company ; because, say the court, the board of directors, being the known legal agents of the corporation, are to be regarded as its representatives in all their official acts. In the case of *The Commercial Bank* v. *French,* 21 *Pick.* 486. *Morton,* J. remarks : " So a contract with the stockholders, or with the president and directors, would doubtless, in legal effect, be a contract with the corporation. The principle is, that the promise must be understood according to the intention of the parties."

We suppose that the usage of banks has conformed to these views. When notes, drafts, &c. have been transmitted from bank to bank, it has been done by indorsements by and to their respective cashiers ; and in such cases, the title to the paper has always been treated as in the bank, and not in the individual who happened to be its cashier.

We think that the intention of the parties here is most manifest, that the assignment of this stock should be made to the bank. And it is always unfortunate, because unjust, that the intention should be thrust aside, by what may be considered a technical principle. The power of attorney to transfer this stock was made to *Edward Hill,* as an individual, without allusion to his connexion with the bank, and by it he was empowered to transfer the stock to himself *as cashier of the Stamford Bank.* The parties understood and acted upon the clear distinction, between *Edward Hill,* as the attorney of *Richards,* and *Edward Hill,* as cashier of the bank.

It has been insinuated, that the principles, which, in such cases as the present, might apply to private individuals, are not applicable to banks and other corporations : that as they have only a limited mode of existence, they are some how to be confined to a technical or prescribed mode of transacting business. At the present day, corporations, acting within their undisputed powers, and especially banking corporations, conform to the fashions of the commercial world in their forms of doing business. The *lex mercatoria* knows little of the distinction between legal and equitable titles to commercial paper, or in the transfer of stocks, unless the parties clearly

intended to make such distinction. And we do not think we should, in this case, be driven, without some more rigid rule than we know of, to hold, that we have here a case of a legal title in *Hill*, with a mere equitable title in the bank, and in this way suffer a creditor to come upon such legal interest, and turn the bank round to some known or unknown remedy to preserve its clearly recognized interest in this stock.

In view of the principles before alluded to, we are at a loss to know how it can be said, that, as a matter of legal inference, the stock in question became the legal estate of *Edward Hill.* We think the legal presumption is the other way. But if there had been any doubt on this subject, at the trial, it might have been made certain, by parol proof. In *Wilson* & al. v. *Hart,* 7 *Taun.* 295. (2 *E. C. L.* 112. 114.) *Park,* J. says, it is the constant course to show, by parol evidence, whether a contracting party was agent or principal. The same doctrine is admitted, in the cases of *Bickerton* v. *Burrell,* 5 *M. & S.* 383. *Mechanics' Bank* v. *Bank of Columbia,* 5 *Wheat.* 326. *Commercial Bank* v. *French,* 21 *Pick.* 486. And indeed, the only real question, in this part of the case, was, whether *Hill* acted in this affair, as agent or principal. And if evidence for the purpose of determining this fact was admissible at all, what more appropriate proof could have been received, than the uniform usage of this very bank, and this very agent, in making transfers of a precisely similar character? This usage was not offered in evidence to controul any rules of law, but only to explain the intention of the contracting parties in a matter in which no body but themselves were interested. As was said by the supreme court of *Massachusetts,* in the case of *Lincoln* v. *The Kennebeck Bank,* 9 *Mass. R.* 157. "The usage adopted by individuals, in any course of business, becomes, as to those parties, rules by which their contracts are to be construed. What is known among parties to be usual in their course of business, is to be taken as assented to." *Blanchard* v. *Hilliard,* 11 *Mass. R.* 85. In the case of *Hood* & al. v. *Reeve,* 3 *Car. & P.* 532. (14 *E. C. L.* 432.) an account was produced in evidence, on the face of which was some ambiguity. *Best,* Ch. J. said, a person who was clerk in the office in which the account was kept, and who is conversant with the mode in which the business was conducted, may be permitted to explain the

meaning of the particular item. This usage of the bank was known to every party connected with this assignment. It must be inferred, that it was known to *Richards* from the tenor of the power of attorney, and also because it was known in fact to his attorney, *Hill.*

We are persuaded, therefore, that it was the duty of the court to have submitted it to the jury to determine whether the transfer of the stock in dispute, was made by *Richards,* to the bank, or to *Hill;* rather than to have taken the question into its own hands, and decided, as matter of law, that the legal title vested in *Hill,* notwithstanding the form of the assignment and the usage of the bank.

The defendant in error relies much, if not entirely, upon the authority of the case of *The New-England Marine Ins. Co.* v. *Chandler,* 16 *Mass. R.* 275. It is true, that some of the prominent features of that case appear in this ; and it is the only case we have seen, which gives colour to this defendant's claim. That was a trustee process, and the question was, whether *Burroughs,* the cashier of the *Union Bank,* was the trustee or debtor of *Chandler,* the principal debtor. *Chandler* had assigned to *Burroughs,* as cashier of the bank, certain stock, as security for a debt due to the bank, with the understanding that the surplus should be paid over to him. There was a surplus ; and it was admitted, that either the bank or *Burroughs* was accountable for it ; and as between themselves, it was not very material which. The object was, to find a trustee, who should be chargeable by the creditors of *Chandler ;* and by the laws of *Massachusetts,* a corporation could not be thus charged. And therefore, the court say, " if the transfer is to be considered as made to the bank, *Burroughs,* the cashier, cannot be considered as the trustee of *Chandler.* And as a corporation cannot be charged as trustee, under our statute, the other creditors would have no remedy against the property, unless they could vacate the transfer, on the ground of fraud." Here was an irresistible equity on the part of *Chandler's* creditors, which could be satisfied, by considering the transfer of the stock as having been made to the cashier, and thus holding him as trustee, and this without working any injustice to the bank or others ; and we may, without disrespect, presume, that this equity had an influence upon the decision of that case. But a distinction

between that case and the present, seems to us apparent. The controversy there was in respect to the *surplus*, after the debt of the bank was satisfied, and to which the bank made no claim. Suppose the attaching creditors had claimed the *whole stock* assigned, on the exclusive ground that the cashier acquired the entire title to the whole, as is now claimed by the creditors of *Richards* here !

Because a majority of us believe that there was error in the decision of the county court, upon the last point we have considered, we advise that the judgment of that court be reversed.

WAITE and HINMAN, Js., were of the same opinion.

WILLIAMS, Ch. J. On the question as to the effect of the transfer by *Richards* to *Edward Hill,* cashier, I think the county court was correct, that it must be considered as a conveyance to *Hill,* and not to the bank.

It is true, that the strictness which once prevailed in relation to grants to corporations where they were misnamed, is, in a great measure, done away ; nor do I desire to see it revived. The rule of law, as well as of common sense, now is, that names were invented to make a distinction between person and person, and if a person or corporation be so described that it well may be distinguished from any other person or corporation, such description is good. Dr. *Ayray's* case, 11 *Co.* 20. & seq. *Counden* v. *Clerke, Hob.* 32. If the name be expressed *in rectu sensu,* although not *in verbis,* it is sufficient. *Mayor &c. of Lynne Regis,* 10 *Co.* 124. *Medway Cotton Manuf. Co.* v. *Adams,* 10 *Mass. R.* 362. *Mayor &c. of Stafford* v. *Bolton,* 1 *B. & P.* 44. And where there are two of the same name, an averment will be admitted to show which was meant. *Hob.* 32. *Coit* v. *Starkweather,* 8 *Conn. R.* 290. But where there are two persons, whether natural or artificial, having their own peculiar name entirely differing one from the other, it is believed there is no authority for saying, that a grant to one will vest the legal interest in the other, as this would directly contradict the writing, and is in fact saying, that a grant or contract made with *A,* is in fact a grant or contract with *B.*

It is said in this case, that the contract is a contract with an

officer of the corporation, for a consideration proceeding from the corporation, and therefore may be treated as made with the corporation.

It seems to me, that such is not the consequence. That the contract was *intended* for the benefit of those from whom the consideration emanated, may perhaps be fairly presumed; and it may fairly be said, that it shall enure for the use and benefit of such persons. But it does not follow from this, that such a contract transfers the legal estate. Nothing is more common than that the legal estate is given to one for the use of another. If the intent here was, that the legal estate should have vested in the bank, why was not the transfer made directly to the bank?

As the object was, to secure debts to the bank, on which *Richards* was indorser, and which might perhaps be paid by the principal, it may have been intended to place the property in a condition where it might more readily be transferred than if conveyed to the corporation. This would be fairly inferable, were it not said to be the usual mode of transfer; and the same reason perhaps has led to this mode. It may be said, that the effect of such a construction would be to make the transfer void, and therefore cannot be presumed to have been intended. The answer to that is, there is no evidence that the failure of *Richards* was known to *Hill*, the attorney, when this transfer was made.

There are many cases in ordinary business, where we may look at all the attending circumstances to ascertain who is agent, and who is principal. But those do not apply, it is believed, to cases of this kind, depending upon power derived from a charter, and affecting the interests of third persons.

That a corporation ought to transact its business under the name and in the manner prescribed by the law which gave it birth, as a general rule, cannot be denied.

The act of incorporation, says Ch. J. *Marshall*, is to them an enabling act; it gives them all the powers they possess. It enables them to contract; and when it prescribes to them a mode of contracting, they must observe that mode, or the instrument no more creates a contract, than if the body had never been incorporated. *Head* & al. v. *Providence Insurance Company*, 2 *Cranch*, 169. It is true, that if a corporation has been in the habit of contracting in a mode not author-

*Fairfield,*
June, 1845.

Stamford Bank
*v.*
Ferris.

ized by charter, they shall not, by disavowing it, be suffered to take advantage of their own wrong, and thus impose upon the world. *Bulkley* v. *Derby Fishing Co.* 2 *Conn. R.* 252. And perhaps, the same rule might be applied to an individual, who had contracted with them in a similar manner. But the question is a very different one, when the rights of third persons are concerned, as in the present case. It then becomes a question, who has the legal title? An attaching creditor must stand in the same situation as a person who derives his title under a transfer from *Hill.* Suppose *Hill* sells these shares as his own, or an officer, wishing to attach them as *Richards'* property, is informed they are transferred to *Hill,* the cashier; could the bank, who, by charter are to contract in their corporate name, claim, as against such persons, that this transfer was in fact to them?

In *New-York,* it has been held, that where stock was transferred to secure a debt, and not re-transferred upon payment of the debt, this property being of a peculiar kind, they could not depart from the terms of the law, and inquire into the equity existing between the stock-holders and some third persons; and the court say, it cannot fail to embarrass creditors. If creditors must look beyond the legal title, they can never know against whom to proceed. *Adderly* v. *Storm,* 6 *Hill,* 624. 628.

Where a note was given to the cashier of a bank, or to his order, a suit was indeed sustained in favour of the bank, as if made to the bank by name. *The Commercial Bank* v. *French,* 21 *Pick.* 486. 491. But the same court, in a former case, had held, that where a note was endorsed to *A. B.,* cashier, by name, though it was for the use of the bank, the legal title was in the cashier, and he might sustain the suit. *Fairfield* v. *Adams,* 16 *Pick.* 381. And the distinction taken by the court, is, that in the one case, the name of the individual was given with his official title, and in the other, the note is to the cashier, without reference to the individual. 21 *Pick.* 491. Another case from the same court, is more directly in point. *Chandler* assigned to *Burroughs,* as cashier, fifty shares of stock of the *New-England Insurance Company,* by a written transfer, it being understood between them, that *Burroughs* was to hold this and other property assigned, as collateral security for debts due to the bank, and might sell

and pay those debts, and hold the surplus on account of <span></span>Chandler. *Burroughs* was cited as trustee of *Chandler*; and the defense was, that the interest was in the bank. But the court say, we think it clear, the transfer is not to the bank, though *Burroughs* is styled cashier, and the transfer was intended to be made to him in that capacity; for it is obvious from the facts disclosed, that *Burroughs* himself was to be the depositary, for the benefit of the bank and of *Chandler*; and he is called " cashier," merely for the purpose of designating the purpose, by an appropriate title. He alone had the legal controul of the stock, and could give title to it by assignment; and although a sale by him without authority of the bank, would be a violation of duty towards the corporation; yet a purchaser, ignorant of his trust, would hold the legal title to the property. *The New-England Marine Insurance Company* v. *Chandler* and trustee, 16 *Mass. R.* 275.

*Fairfield,*
June, 1845.

Stamford Bank
v.
Ferris.

In this case, as in that, the defendants claimed, that the transfer was merely to secure debts due to the bank, upon which *Richards* was indorser. *Hill*, therefore, stands in the same relation to *Richards*, as *Burroughs* to *Chandler*; and if *Burroughs* acquired the legal estate, in that case, we see not why *Hill* did not acquire it here. If the notes on which *Richards* was indorser, were paid, it would become the duty of *Hill* to reässign the shares; the object having been accomplished.

It is said, the usage of the bank, is, to take transfers in this way. Suppose it had been the usage to take deeds of real estate to the cashier, to secure debts due to the bank; would it follow, that the legal title vested in the bank? Does the usage, if proved, change the character of the transaction, or show where the legal title is? The usage may tend to prove for whose use the transfer was intended, and that the bank was satisfied with the security in this form. In the case last cited, it was said, this was the usual course of banks, and it had always been considered, that property thus transferred vested in the corporation; and that if it was not so held, the banks would be exposed to loss, &c. But the court said, that consequence, it is true, may be apprehended; but it can be guarded against, by adopting another course; and it is for these and all other corporations to conform to the law, and not for the law to bend to their convenience.

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1845.*

Stamford Bank
*v.*
Ferris.

Believing that the result to which that court arrived, is conformable to principles recognized by us, and knowing no conflicting decisions, I feel bound to depart from the opinion expressed in favour of the reversal of this judgment.

STORRS, J. concurred in this opinion.

Judgment reversed.