DWIGHT MORRIS *vs.* THE BRIDGEPORT HYDRAULIC COMPANY.

47 279
70 530

47 279
76 683

The plaintiff alleged in his declaration that the defendants were incorporated to supply the city of *B* and its inhabitants with water, and that it was their duty and that they had contracted to furnish him with a constant supply for his dwelling-house within the city. On the trial the plaintiff offered in evidence the charter of the defendants, to the admission of which they objected gener-ally, but the court admitted it. Held that, even if the charter did not create

a duty to supply the water and so was inadmissible for that purpose, yet as the objection was a general one, and the charter was admissible for the purpose of showing the power of the defendants to make the contract alleged, there was no error in admitting it.

Where there is claimed to be a fatal variance between the allegations of a declaration and the proof, and the facts are undisputed, it is the duty of the court to rule upon the question of variance as a matter of law.

But where the declaration alleged in one count a contract of the defendants to supply the plaintiff with water for six months and in another for an indefinite time, and the matter of the length of time was in dispute, it was held that the court properly charged the jury that if there was a variance between the allegations and the proof the plaintiff could not recover and that it was for them to say whether the contract had been proved as laid.

And held that evidence was admissible that the defendants had from time to time presented bills for water furnished the plaintiff after the grievance complained of, sometimes semi-annually and sometimes annually, especially upon the question as to the length of time for which they had agreed to furnish the water.

The plaintiff had alleged a contract of the defendants to supply his house with water and deliver it through their pipes at and within his house. It appeared in the proof that the water was to pass through the defendants' main pipe to a point where that pipe connected with the service pipe of the plaintiff, a hundred feet from his house, and thence through the latter pipe into the house. Held that, as the only important thing was the contract to supply water for the plaintiff's house, the fact that it passed for a short distance through a pipe belonging to the plaintiff was immaterial and did not create a variance.

The defendants however claimed in this court that the variance consisted in an allegation that they agreed to deliver the water at and within the plaintiff's house, while the proof was that they agreed to deliver it at the point where the plaintiff's service pipe connected with their main pipe. Held that, as the point made in the court below was only as to a variance in respect to the pipes through which the water was to be carried to the plaintiff's house, which was totally different from the one now made, the defendants could not be heard as to the variance now claimed.

Where there are several counts for the same cause of action and there is some evidence for the jury to consider upon each, it is no error for the court to refuse to instruct the jury to designate in their verdict upon which count or counts it is found.

ACTION on the case for wrongfully neglecting to supply a boiler in the dwelling-house of the plaintiff with water, by reason of which the boiler collapsed and was destroyed; brought to the Superior Court in Fairfield County.

The declaration contained two counts. In the first the plaintiff alleged that the defendants were at the time of the grievances complained of and long before had been, a corpora-

tion chartered by the General Assembly and organized for the purpose of supplying the city of Bridgeport and the persons residing in the city, with an abundance of pure water for domestic use for a certain price received by the defendants, and that under said charter it became their duty, and that they had contracted with the plaintiff, to furnish him with a constant and abundant supply of water for all the domestic and other uses of himself and family for a time extending beyond the time of the grievance complained of, and to deliver the same continually and without interruption from and through their water-pipes at and within his dwelling-house situated on Fairfield Avenue in said city. The declaration then averred that the defendants had shut off the water without notifying the plaintiff, and that in consequence a large and valuable boiler in his house, that was supplied with water from the defendants' pipes, being left empty while in a heated condition, collapsed and became broken and worthless.

The second count alleged the same general facts but stated the contract of the defendants to be to supply the water for one year from the first day of October, 1870, in consideration of the sum of fifty dollars to be paid by the plaintiff semi-annually. This count also alleged the contract of the defendants to be to deliver the water through their water-pipes at and within the dwelling-house of the plaintiff on Fairfield Avenue, and set forth the wrongful acts of the defendants and the destruction of the boiler on the 19th day of February, 1871, substantially as they were set forth in the first count.

The defendants pleaded the general issue, with notice that they should claim that they were unable to furnish the water at the time complained of in consequence of a sudden break in one of their mains, which occurred without their fault, that it was necessary to shut off the water to repair it, and that they completed the repairs with all possible diligence; and further that the injury sustained by the plaintiff was owing to his own negligence. The case was tried to the jury before *Hovey, J.*

Upon the trial the plaintiff offered in evidence the resolution of the General Assembly, passed in 1857, incorporating

the defendants, and with it what was known as the proposition of Nathaniel Greene. A section of the charter provided that if the company should fail to comply with and perform all the conditions and stipulations relative to supplying the city with water contained in the proposition of Nathaniel Greene on file in the office of the city clerk of Bridgeport, then all the rights and privileges conferred by the resolution should cease and determine. The defendants objected to the admission of both these documents, but the court admitted them. It appeared that the defendants had organized under the charter soon after its passage and had ever since exercised and enjoyed all the powers and privileges conferred by it.

The plaintiff became the owner of a dwelling-house on Fairfield Avenue in Bridgeport, on or about the first day of October, 1869, and went into the actual occupation of the same on the 4th day of that month. The house at that time was furnished with a boiler and other apparatus for heating it with steam, which had been placed therein some years before by the party of whom the house was purchased by the plaintiff. The boiler was connected by means of service pipes belonging to the house with the street main pipe of the defendants, about one hundred feet from the house, and was thus supplied with water by the defendants from their reservoir during the whole period that the boiler and heating apparatus had been in the house.

The plaintiff commenced using the water thus supplied immediately after he went into possession, and from that time until the 14th day of February, 1871, the defendants allowed the water to run without interruption from their reservoir through their main pipes and the plaintiff's service pipes to and into the plaintiff's boiler; and thus, during all that time, furnished the plaintiff with an abundant supply of water for the use of the boiler and for heating the house.

The plaintiff paid the defendants on the first day of April, 1870, the sum of $25 for the water necessary for the boiler and house from that time until the first day of October, 1870; and in the month of October, 1870, he paid them the further sum of $37.50 for the water from the first day of that month

until the first day of April, 1871, but made this payment by mistake, intending to pay at the rate of $50 per year only, and immediately after the payment notified the company of the mistake.

The defendants for several years after April 1st, 1871, continued to present to the plaintiff bills for the water—some of the time semi-annually, and other portions of the time quarterly, and all of them at the rate of $75 a year.

The plaintiff claimed that the contract stated in one or both counts of his declaration was proved, and proved as stated, by the above facts, which were not disputed. The defendants claimed that if any contract was proved by those facts, it was a contract to supply the plaintiff with water for six months, and not for the indefinite period stated in the first count, or for the period of one year as stated in the second count; and thereupon claimed that there was a material variance between the allegations in both counts of the declaration and the proof, and requested the court so to charge the jury.

They also claimed, and requested the court to charge the jury, that there was a material variance between the allegations in both counts of the declaration and proof in this: that in both counts it was alleged that the defendants contracted to furnish the plaintiff with an abundant supply of water, and to deliver the same through *the defendants' water-pipes*, at and within the plaintiff's dwelling-house, while the proof was that they contracted to furnish the plaintiff with water, and to convey the same through their own main pipe *to the point where that pipe connected with the service pipes of the plaintiff, and thence through the latter pipes* to the plaintiff's dwelling-house.

The court did not charge the jury as requested by the defendants, but charged them as follows:—"To entitle the plaintiff to recover under either count of his declaration it is essential that the contract laid or set forth in that count should be proved, and proved as therein laid. It is for the jury to say in view of the evidence before them whether the contract stated in either count of the declaration is proved as therein laid; for if there is a variance between the contract

as laid, and the proof, in either of the particulars claimed by the defendants, the plaintiff is not entitled to recover."

The evidence to prove that the defendants for several years after April 1st, 1871, continued to present to the plaintiff bills for the water, was admitted by the court against the objection of the defendants.

The counsel for the defendants, at the conclusion of the charge to the jury, and as the jury were about to retire, requested the court to direct the jury that in case they should find a verdict in favor of the plaintiff they should designate therein whether such verdict was found upon both, or if not upon both, upon which of the counts in the plaintiff's declaration. But the court declined to give the jury any instructions upon the subject.

The jury returned a verdict in favor of the plaintiff, and the defendants moved for a new trial for error in the rulings and charge of the court.

*A. S. Treat* and *W. K. Seeley*, in support of the motion.

1. The plaintiff's declaration contains two counts. The first is based upon an alleged duty of the defendants to supply him with water as and to the extent alleged, and a disregard of that duty; the second, upon the same alleged duty, and a contract by the defendants to supply him with water, and a disregard of both the duty and the contract. In both counts this duty is alleged to have arisen from the purposes of the organization of the company, from some contract, and from the company having previously delivered water to the citizens of Bridgeport. In the case of *Nickerson* v. *Bridgeport Hydraulic Co.*, 46 Conn., 24, this court held that no obligation was created and no duty imposed upon the defendants on account of the provisions of their charter, the privileges therein granted, or the purposes of their organization. If then no such obligation is created and no duty imposed by their charter on the defendants as is alleged, it would seem quite clear that the charter would not be admissible in evidence to support the declaration, and ought to have been excluded.

Morris *v.* Bridgeport Hydraulic Co.

2. There was no claim nor evidence of any express contract. The implied contract set out in one count is very different from that set out in the other. In the first the plaintiff alleges that the defendants contracted to furnish him with water from a long time before until a long time subsequent to February 19th, 1871, and in the second for one year from October 1st, 1870, for $50, to be paid semi-annually. To prove these contracts the plaintiff offered evidence that "the defendants for several years after April 1st, 1871, continued to present to him bills for water—some of them semi-annually, and other portions of the time quarterly, and all of them at the rate of $75 per year." These bills must have been for water furnished after April 1st, 1871, for the plaintiff proved he had paid to that date. How the fact of furnishing water after April 1st, and presenting bills therefor, tends in any manner to prove a duty or contract to furnish it before that time, it is impossible for us to see. But, if the fact tends to prove anything, it is evidence of an implied contract to furnish the water from one-half year to another for $37.50 each, or from one quarter to another for $18.75 each, and not for an indefinite time for nothing as alleged in the first count, or for a year for $50 to be paid semi-annually, as alleged in the second count. This evidence also ought to have been excluded.

3. All the facts by which the plaintiff claimed to have proved his case appear upon the record, and were wholly undisputed by the defendants. The plaintiff paid the defendants for water from October 1st, 1870, to April 1st, 1871, $37.50 in advance. He claims indeed that he intended to pay only $25, and the $12.50 was paid by mistake. It does not appear that the defendants when notified assented to the claim of mistake. But perhaps that makes little difference. The contract implied would of course be that the defendants had contracted to supply the plaintiff with water six months, from October 1st, 1870, to April 1st, 1871, in consideration of the payment to them of $37.50 or $25 therefor in advance. The contract stated in the first count is for an indefinite time, and without consideration—in the second for one year in

consideration of $50 to be paid. An indefinite time, and one year, are neither of them the same as six months. Actual payment in advance is not a promise of future payment. In both counts the plaintiff alleges that the defendants contracted to deliver water through their own pipes at and within his house and into his boiler. The house is about one hundred feet from the defendants' pipes, and the boiler doubtless somewhat farther. The fact found is, that the pipes from the street to the house and boiler belonged to the owner of the house, and the defendants for several years had been supplying water from their main pipe to the service pipes leading into the house, and so continued to October 1st, 1870, and received pay therefor. No new contract can be implied from the mere continuance of supply, nor from payment, nor from both. From the payment in advance and receipt of the water rate for six months, a contract would be implied to supply water the same six months as usual. No other contract would be implied. The contract stated to supply water to a boiler is quite different from the contract proved to supply water to a service pipe more than one hundred feet from the boiler. The variances between the contracts and considerations stated in both counts and the facts are material and fatal. *Curley* v. *Dean*, 4 Conn., 259; *Ferris* v. *Comstock*, 33 id., 513.

4. The question of variance was a question of law. The facts being undisputed there was nothing for the jury to find —no question of fact to be submitted to them. The variances being apparent and material, the court should have so charged the jury, as requested. *Walcott* v. *Canfield*, 3 Conn., 194; *Willoughby* v. *Raymond*, 4 id., 130; *Rossiter* v. *Marsh*, id., 196; *Curley* v. *Dean*, id., 259; *Morris* v. *Platt*, 32 id., 75; *Camp* v. *Hartford & N. York Steamboat Co.*, 43 id., 333; *Carpenter* v. *Smith*, 10 Barb., 663; *Dascomb* v. *Buffalo & State Line R. R. Co.*, 27 id., 221; *Pollock* v. *National Bank*, 7 N. York, 274; *Roth* v. *Buffalo & State Line R. R. Co.*, 34 id., 548; *U. States* v. *Tillotson*, 12 Wheat., 180.

5. If the questions of variance were properly submitted to the jury, then the court, as requested, should have directed the jury to designate the count or counts upon which they

found their verdict. The different contracts stated could not both be proved by the same facts, and one of the counts is insufficient, and therefore it was the right of the defendants to be informed which was found proved by the admitted facts. *Wolcott* v. *Coleman*, 2 Conn., 324; *Stamford Bank* v. *Ferris*, 17 id., 258.

*J. B. Curtis* and *H. S. Sanford*, contra.

LOOMIS, J. The first question for review presented by the motion is, whether the ruling of the court was correct, admitting as evidence in support of the declaration the act incorporating the defendant company and the proposition of Nathaniel Green therein referred to.

The argument in support of the objection to this evidence rests wholly on the assumption that it must have been received for the sole purpose of showing the duty of the defendants to supply water to the plaintiff's boiler. If this was its sole office we concede the objection to be well taken, as within the principle decided in *Nickerson* v. *Bridgeport Hydraulic Co.*, 46 Conn., 24. But the assumption is fallacious. The objection to the evidence was general, and no restriction was made when it was offered or received. If therefore it was admissible for any purpose it sufficiently vindicates the ruling of the court. Now the declaration, especially in the second count, alleges a contract between the parties whereby the defendants were obligated to supply the plaintiff with water. The contract raises the duty, the culpable omission to perform which furnishes the ground of liability. It was incumbent on the plaintiff therefore to prove a valid contract, and the defendants being a corporation necessarily of limited powers for contracting, one step surely in the chain of proof would be to show that the contract was *intra vires* and binding if made, which could only be shown by the evidence objected to; and as to the proposition of Nathaniel Green, it was a part of the act of incorporation and admissible as such.

The next question in order is, whether the court erred in omitting to instruct the jury that there was a fatal variance

between the allegations and the proof in the two particulars mentioned.

This question arose, not upon objection to the evidence when offered, but only during the final argument to the jury, upon the defendants' requests to the court as stated in the motion.

The court in its charge to the jury assumed that if the facts alleged in the requests were proved, the variance would be fatal, but submitted the matter to the jury contingently upon their finding as matter of fact. The defendants claim that where the facts are wholly undisputed and there is nothing for the jury to find, it is the duty of the court, if requested, to instruct them specifically whether or not there is a variance as claimed. We accept the proposition thus stated as correct.

The first ground of variance claimed respects the duration of the contract. In the first count the time during which the defendants were to furnish the water is indefinite, while in the second count it is one year. The request assumes that the proof shows that it was for six months. The fact however is nowhere so found or stated in the evidence.

The motion merely recites certain evidential facts, namely, the use of the water by the plaintiff from and after the 4th day of October, 1869; two payments by the plaintiff at the request of the defendants, one of twenty-five dollars made April 1st, 1870, for the water from that date until October 1st of the same year, and one during the latter month of thirty-seven dollars and fifty cents for the water until April 1st, 1871, the plaintiff claiming a mistake of $12.50 in the sum he intended to pay. And then, for several years after the last date, the defendants continued to present to the plaintiff bills for the use of the water, sometimes semi-annually and sometimes quarterly at the rate of seventy-five dollars per year. From these items of evidence it was for the jury, and not the court, to infer the duration of the con-tract. The inference was wholly one of fact and not of law, and therefore the question was properly left to the jury.

The verdict shows they must have found either an indefinite

time, or one year. Whether this result was against the evidence or not, the present motion does not permit us to decide.

The disposal of the second ground of variance depends on the answer to be given to the question, whether an alleged contract "to furnish the plaintiff with an abundant supply of water and deliver the same through the defendants' water-pipes at and within the plaintiff's dwelling-house," is supported by proof of a contract to furnish the plaintiff with the water, "and convey the same through the main pipe of the defendants to the point where that pipe connects with the service pipes of the plaintiff, and thence through the latter pipes into the plaintiff's dwelling-house."

It will be observed that the subject matter and object of both contracts is the same—the furnishing of the water, and that the place of delivery is the same—"in the plaintiff's dwelling-house." The only discrepancy relates to the owner-ship of a hundred feet of pipes, through which the water was to be delivered into the plaintiff's dwelling-house.

As a test of the substantial identity of the two contracts we will suppose the defendants, under just such a contract as is set up in the declaration, had furnished the plaintiff at all times an abundant supply of water in his dwelling-house and boiler, would it be possible to predicate even the most techni-cal breach of the contract on the fact that some person other than the defendants owned a small portion of the pipes? The very supposition seems absurd. The gist of the undertaking is to furnish the water at the place named. The ownership of a part of the conduit through which the water is to be delivered is an immaterial and superfluous matter. It is neither of the substance of the issue, nor does it narrow or limit that which is essential.

Again, to change the illustration, suppose $A$ contracts to sell $B$ a specified quantity of corn to be delivered by the for-mer in his wagons at the store of the latter, and the proof is, that all the corn was actually delivered by $A$ at the place mentioned, but in delivering it he used a wagon belonging to $B$. Would not the last mentioned fact be deemed wholly

immaterial and would not the contract be fully performed? Clearly so it seems to us; and the supposed case is quite analogous in principle to the one at bar. We conclude therefore that the court was under no obligation to charge the jury as requested.

In reviewing the question we have limited the discussion to the facts just as they were claimed in the court below in the defendants' request, where the claim of variance was predicated wholly on the ownership of the pipes. But the argument in behalf of the defendants in this court seemed to base the claim upon a fact materially different—that the place for the delivery of the water was at the junction of the service pipes of the plaintiff with the street main pipe of the defendants. But as the request to the court below did not assume any such fact as proved, and the evidence was not objected to on the trial, we cannot give the defendants the benefit of the new question now made for the first time.

The defendants also claim to have been aggrieved by the ruling of the court admitting evidence that after April 1st, 1871, the defendants continued to present bills to the plaintiff for the use of the water.

It must of course be conceded that the question at issue was as to the terms of the contract at the time when the controversy arose, and not afterwards, and the evidence, to be admissible, must tend to throw light on that point.

The objection was not founded on any pretence that a change in the contract relations of the parties had occurred. It is virtually conceded that there was no change, and that the water continued to be furnished as before. Under these circumstances, in the absence of all direct evidence, the manner of dealing between the same parties relative to the same subject matter, for a reasonable time after as well as before the period of controversy, we think might tend to show inferentially how the parties regarded it at the very time in question. It may be suggested that the present case does not fall within the above principle for the reason that the evidence failed to show any corresponding action on the part of the plaintiff in the way of payment, or any response whatever to

the presentation of the bills. The evidence as received showed that the defendants continued to present bills for the use of the water, some quarterly, some semi-annually, but all at the rate of seventy-five dollars per year. Now, although this action was on the part of the defendants alone, yet it might be considered as in the nature of an admission, tending to show by inference how the defendants regarded the contract in respect to time.

The only remaining question is whether the court erred in declining to instruct the jury as requested, that if their verdict should be for the plaintiff they should designate upon which count it was found.

Where there are several counts for distinct and independent causes of action, or where there is no evidence at all applicable to some of the counts, it would doubtless be the duty of the court to comply with such a request. But where, as in this case, all the counts are for one and the same cause of action, and there is some evidence for the jury to consider applicable to each of the counts, the refusal of the court to comply with such a request is no ground for a new trial. *Bulkley* v. *Andrews*, 39 Conn., 523; *Kearney* v. *Farrell*, 28 Conn., 317; *Stamford Bank* v. *Ferris*, 17 Conn., 259.

A new trial is not advised.

In this opinion the other judges concurred.