WILBERT H. GILLETTE *vs.* WILLIAM R. GOODSPEED.

First Judicial District, Hartford, May Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Whether a particular ferryboat should be equipped with a certain kind of apparatus or safeguard, in preference to any other, is a practical question within the functions of the commissioners appointed by the State to inspect and regulate the operation of such ferry.

While it is the duty of a ferryman to equip his boat with suitable appliances for the safe transportation of persons and property, there is no rule of law which requires him to provide his boat, at all times and under all circumstances, with gates, chains, or other barriers at either end; and a judgment against him for negligence, based wholly upon such conception of his duty, is erroneous.

The fact that the ferry commissioners had not for years required this special equipment, gives rise to a presumption which is entitled to some weight in determining the question of legal duty.

If goods in the hands of a bailee are lost by the wrongful act of a third party, the latter is liable to him for their full value, unless the owner interposes by a suit for his own protection.

[Argued May 5th—decided July 13th, 1897.]

ACTION to recover damages for the loss of a horse and carriage through the negligence of the defendant, brought to the Superior Court in Middlesex County and tried to the court, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *Error, and new trial ordered.*

The finding of facts was as follows : The defendant was, on October 16th, 1895, a ferryman and carrier of passengers and teams, by boat propelled by steam, on the Connecticut river, between the towns of East Haddam and Haddam, and received on his boat for transportation the plaintiff and his horse, and a carriage which the plaintiff had borrowed of its owner for temporary use, and was then using; taking the usual toll for transportation of passenger, horse and vehicle.

The plaintiff, at about 7: 30 o'clock in the evening, led his horse with the carriage on the boat, stopping about midway of the boat, and there held the horse by the reins under the mouth and by the nose. There was no chain, gate, or guard of any kind at either end of the boat, and none had been provided by the defendant. No one tendered the plaintiff any assistance, nor was any offer made to him by the defendant or by his employees in the management of the boat, to tie or fasten the horse in any way, or to take the charge or custody of the property, and the plaintiff was left in the care of it, while the boat was on its passage across the river.

On the way over the river the horse took a sudden fright at some noise or other, started suddenly, and went forward off the end of the boat, and was drowned. The carriage went overboard with him and was injured. The plaintiff held the horse in the manner above described, and as well as he was able, until he reached the end of the boat, but was unable to control him, and was compelled to let go his hold to save himself. Had the boat been provided with a chain or gate, or other reasonably safe guard at the end, the plaintiff by reason of it would have been able to control the horse, and the horse and carriage would not have gone overboard. The want of such chain, gate, or guard, was the proximate cause of the plaintiff's loss. The plaintiff exercised

reasonable care in the custody and control of the horse, and was free from any negligence whatever amounting to a want of ordinary care and contributing to his injury. The defendant did not exercise due or reasonable care, and was negligent in failing to provide and make use of sufficient guards at the end of the boat for the safe transportation of teams left, as was the plaintiff's, in the custody and care of their owners or drivers, and the plaintiff's injury was due to the defendant's negligence in that regard.

Testimony, introduced without objection, shows that the equipment of the boat on which the accident occurred is same as has been used on the defendant's ferry for much the greater part of twenty-three years, and that during that time 125,000 horses were transported without accident or loss.

The defendant has not failed to meet any requirements made either by the United States government inspectors, or by the State ferry commissioners in the management of the ferry.

The defendant provided the boat with certain rings fastened in the timbers of the boat, to which horses might be tied by the necks, and also certain rings to which axles of carriages might be chained, and had also ropes and chains in the cabin of the boat, where they were usually kept (but not at the time connected with the rings), which might have been used for the purposes mentioned; but the defendant's employees did not offer to use them, or suggest their use. If the means provided to secure the safety of teams had been employed on this occasion, the horse would not have gone off the boat. There are other ferryboats used on the river equipped as was the defendant's boat, while some of the boats there used have chains or guards of some kind at the ends. Horses securely fastened to the rings on the boat would be less likely to go overboard than they would be if held by the owners or drivers, no guard of any kind being used at the end of the boat; but horses so tied or fastened are liable to injure themselves, and in view of all risks or danger, horses are probably safer when held by men of ordi-

nary strength than they are when fastened to the boat. The plaintiff had for several years crossed on the ferryboat frequently with a team, and knew about the rings on the boat for the fastening of horses, but knew also that it was not the practice of the officers or employees on the boat to use them. He did not ask to have his horse tied or carriage chained to the boat. He had crossed on the boat on the morning of that day with the horse, which then showed no signs of fear, and he believed him gentle and kind.

It was the custom of the officers and employees on the boat to leave teams in the custody of owners, and it was only when a horse showed some sign of fear, or when there appeared some special reason for interference, that they would offer to take charge of a team or render any assistance in caring for it. The employees of the defendant, on this occasion, exercised reasonable care in respect to noises on the boat. The plaintiff testified that he had always regarded the boat as in a dangerous condition, and as not a safe boat for the carrying of teams, but that he had never made complaint to the defendant on that account.

It is found that in the seven years prior to the accident, during which time the plaintiff had crossed the ferry as often as once a week, officers of the boat had perhaps four or five times asked him whether he would have his horse tied, and that he had declined on all those occasions but one. Once he accepted the suggestion, and the colt which he had was tied. He had not declined to have this horse fastened, and it was not shown what kind of a horse he had when suggestions of fastening were made to him and declined, or under what circumstances they were made. It is not found that there was any contract between the plaintiff and defendant, either express or implied from their conduct or course of business, modifying or varying, for this occasion, the contract between a ferryman and his passenger accompanied by a team, or that the plaintiff had expressly or impliedly waived any right of safe transportation due him as a passenger on the ferry with his team, at the time of this crossing.

Upon the foregoing facts the defendant made, among others,

the claims that he had provided a reasonably safe boat for the transportation of passengers and teams, and so was not liable in this action; and that, the carriage not being the plaintiff's property, he was not entitled to recover damages for injury to it.

The court gave judgment for the plaintiff, and included in it an item of $70 for injury to the carriage.

*Rollin U. Tyler*, for the appellant (defendant).

*John M. Murdoch*, for the appellee (plaintiff).

BALDWIN, J. A ferry can only be maintained by authority from the State, and is the proper subject of public regulation. *Enfield Toll Bridge Co.* v. *Hartford & New Haven Railroad Co.*, 17 Conn. 40, 64. Our laws provide that every ferry shall be furnished with a boat properly provided and manned, sufficient for the safe and speedy transportation of passengers, their teams, and other property; that two commissioners shall be appointed for each ferry, who shall, as often as they deem necessary, carefully inquire into its management, inspect the boats, and see that it is kept according to law; that, should they at any time find that it is not so maintained, they shall order the town or towns in which it is situated to make the defect good within such time as they shall appoint; and that if this order is not obeyed, they shall themselves cause the deficiency to be repaired or supplied as soon as possible; the expense to be liquidated by the Superior Court, which shall issue execution therefor in their favor against the defaulting town or towns. It is further provided that any person who is bound to maintain a ferry between towns, may be compelled by them so to do, and to reimburse them for all charges legally incurred by them by reason thereof; and that if he should, in the opinion of the commissioners, neglect to maintain it according to law, they can make an order against him for its maintenance, on pain of his forfeiting all his interest to the town or towns in or between which the ferry is situated. General Statutes, Chap. CLXII, p. 604.

A special tribunal has thus been erected for the inspection of ferryboats, with power to pass summary orders for any changes in them deemed necessary for the safety of passengers or their teams, and to enforce them, in case of need, at the expense of the town or towns in which the ferry landings may be.

The defendant's boat was provided with rings, ropes and chains, for securing horses and vehicles. It had been thus equipped for many years, during which it had transported over a hundred thousand horses without injury to any. It is found that horses fastened to such rings are less likely to go overboard than if held by their owners, but are liable to injure themselves, and, in view of all risks of danger, are probably not so safe as when held by men of ordinary strength.

The complaint charges the defendant with fault in two particulars.

One is the making of unnecessary noise in the use of the steam power by which the boat was run; but the finding is that in this respect there was no want of reasonable care.

The other is neglect to provide the ends of the boat with any chain, gate, or other guard. By this averment the plaintiff asks the courts to pass upon a matter peculiarly within the jurisdiction of the ferry commissioners. Whether a certain ferryboat should be equipped with a certain kind of apparatus or safeguard, in preference to any other, for the protection of horses, is a practical question which can best be determined by those specially familiar with the ferry business and the particular local circumstances affecting the particular ferry.

It is found that the defendant has not failed to meet every requirement of the commissioners on his ferry. It must be assumed that those public officers have done their duty. If they have not ordered him to replace or supplement his apparatus for securing horses and teams from risk of injury, by gates, chains, or other guards at either end of the boat, it is presumably because they deem it unnecessary or unwise. Any such safeguards, if maintained throughout the trip, must

to some extent be an impediment to a speedy landing; and if removed before the shore were reached, the act of their withdrawal might lead horses to suppose the time had come to start, and so become uneasy and restive. The balancing of advantages and disadvantages between the adoption of one or another method of promoting the convenience and safety of travelers in these respects, is an appropriate function of the commissioners set by the State to oversee this ferry.

The finding of the Superior Court that the defendant was negligent in not providing gates, chains, or other barriers, at the end of the boat, cannot support the judgment, unless it further appears that he was under a legal obligation to make such a provision. Guards of this description certainly cannot be said to be necessary in every ferryboat. The ferryman is not an insurer of the safety of passengers, or of the property in their keeping. *Evans* v. *Goodrich,* 46 Minn. 388; *Loftus* v. *Union Ferry Co.,* 84 N. Y. 455.

The only negligence on the part of the defendant, which is stated in the finding, is a failure to perform the duty which it was assumed that the law imposed upon him of equipping his boat at both ends with guards. It is found that he provided for the protection of the plaintiff's team means which, if used, would have prevented the accident, and that the plaintiff knew of these means, and did not use them, believing his horse to be kind and gentle. It is not found that the defendant was negligent under such circumstances in failing to ask the plaintiff to thus secure his team; and a finding of negligence on such ground could hardly be defended. The question of negligence depends wholly on the ruling of the court that it was the duty of the defendant to provide his boat at all times with the guards specified. Had it appeared that the attention of the ferry commissioners had been directed to this matter and an order made regulating the use of guards, a compliance with that order might have protected the defendant; and certainly would, unless the evidence showed that for reasons peculiar to this case the requirements of ordinary prudence called for additional and special pre-

caution. *Nolan* v. *N. Y., N. H. & H. R. R. Co.*, 53 Conn. 461, 473; *Dyson* v. *N. Y. & N. E. R. R. Co.*, 57 id. 9, 22; *Rowen* v. *N. Y., N. H. & H. R. R. Co.*, 59 id. 364, 369; *Bates* v. *N. Y. & N. E. R. R. Co.,*, 60 id. 259, 266. And in the absence of any such order, the presumption arising from the failure of the commissioners, for more than twenty years, to prescribe this special equipment, is entitled to some weight in deciding the question of legal duty. We do not think that guards of the kind described are so clearly requisite to the safe transportation of property by ferrymen, that the law imposes upon each one the duty of providing such guards. There is nothing in the present case to indicate any special duty belonging to this ferryman. It follows that the plaintiff failed to prove any actionable negligence.

Had he been entitled to recover, it would have been proper to include, as was in fact done, the value of the wagon in the damages assessed. If goods in the hands of a bailee are lost by the wrongful act of a third party, the latter is liable to him for their full value, unless the owner interposes by a suit for his own protection. The sum recovered by the bailee, above what is necessary to compensate him for the loss of his possession and special property, he will hold in trust for the owner; and the wrong-doer cannot complain that he is made to pay greater damages than the plaintiff has sustained, because the plaintiff, for all the purposes of the action, represents the owner, and occupies his place. *White* v. *Webb*, 15 Conn. 302.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.