IDA FREEDMAN, ADMINISTRATRIX, *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, October Term, 1908.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A single sentence in a charge to the jury must be read and understood in the light of its context.

The rapid transportation of persons and property—the very purpose for which railroad companies exist—would be defeated to a great extent if they were obliged to so reduce the speed of their trains at grade-crossings generally as to be able to avoid collisions with highway travelers who might accidentally or negligently be upon the crossing. Accordingly, in the absence of any restrictive statute or order, a railroad company is not liable for negligence merely because it runs its trains over grade-crossings at a rate of from twenty-five to fifty miles an hour, provided reasonable care is exercised in looking out for travelers on the highway, and in avoiding injury to those who are discovered to be in a perilous position.

On returning a verdict for the defendant, the jury are not required to respond to written interrogatories, filed by that party, which upon the face of the paper call for answers only in case of a verdict for the plaintiff. If the latter desires to submit interrogatories of his own, or to have the defendant's answered irrespective of the result of the trial, he should make known that desire before verdict; and if he understood that the interrogatories were to be answered, whatever the verdict, he certainly should not continue silent, if they remain unanswered, until the jury is discharged.

In the absence of any recorded objection, an appellant may be presumed to have assented to the submission to the jury of the written interrogatories propounded by his adversary.

The purpose of a special verdict is to furnish the basis of a judgment to be rendered, while that of written interrogatories addressed to the jury is to elicit facts whereby to test the correctness of the verdict and ascertain its extent.

The trial courts of this State have power to submit pertinent written

interrogatories to the jury to be answered by them upon returning a general verdict. When, and to what extent, this should be done, and when and how counsel may request interrogatories to be propounded, must be largely determined, in the absence of any statute or rule upon the subject, by the trial court in the exercise of its reasonable discretion.

Such interrogatories should be few, clear and concise; each should call for the finding of but a single fact, and, when practicable, for a categorical answer; none should call for a conclusion of law, nor for a finding of a purely evidential or of an uncontroverted fact; the fact sought to be elicited must be pertinent to some issue, and one which may be of material weight in deciding it; and no interrogatory should be permitted, the response to which cannot serve either to limit or explain a general verdict, or be of some benefit in proceedings brought to review it or the judgment rendered thereon.

Argued November 11th, 1908—decided February 16th, 1909.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and tried to the jury before *George W. Wheeler, J.*; verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

The plaintiff's intestate, Louis Freedman, was struck and killed by a train of the defendant on its Northampton Division at a grade-crossing on Brewster Street in the city of New Haven. At the place of the accident the tracks of the Northampton Division run generally north and south, and cross Brewster Street, an unpaved highway extending east and west, at grade. There were neither gates, flagman, nor electric warning bell at said crossing. It did not appear that any had been ordered by the railroad commissioners. The negligence alleged was (1) the propelling of the engine over the crossing at an unlawful and dangerous rate of speed and without blowing the whistle or sounding the bell; (2) the failure to keep a proper lookout as the engine approached the crossing; and (3) the failure to stop the engine after the defendant had an opportunity to observe the peril of Freedman.

The plaintiff's intestate was about thirty-five years of

age. For several years before the accident he had conducted a grocery business on Dixwell Avenue, a few blocks from the place of the accident. At about nine o'clock of the morning of December 11th, 1906, while driving westerly in an ordinary open grocery wagon, engaged in taking orders from his customers, he approached said crossing. At the same time there was approaching the crossing from the south a special train of the defendant, consisting of an engine, tender and caboose, running, as claimed by plaintiff, from forty to fifty, and by defendant, from twenty-five to thirty-five miles an hour, the sound of which could be distinctly heard. Freedman commenced pulling up his horse, as claimed by the plaintiff, at some forty or fifty feet before reaching the crossing, and, as claimed by defendant, at about twenty feet from or nearly on the crossing. The engine struck the team just after it had got onto the crossing. It was stated by the trial judge to the jury, as an apparently conceded fact, that Freedman knew of the approaching train some time before he pulled up his horse.

Several years before this accident the railroad commissioners, upon the petition of the mayor and common council of New Haven, had made an order requiring the defendant to omit the sounding of the whistle at a point eighty rods before reaching the crossing, as required by statute, and the whistle was not blown when the train approached the crossing at this time. The plaintiff offered the testimony of witnesses that they heard no bell ring, and the defendant of several witnesses who heard it ring.

It was apparently undisputed at the trial that at a point on Brewster Street from fifty to seventy-five feet east of the track, a train approaching from the south could be seen at a point from five to six hundred feet south of the Brewster Street crossing; and that the engineer first slackened the speed of the train in question and applied the emergency brake at a point about one hundred feet south of the Brewster Street crossing.

Of the numerous requests to charge, filed by the plaintiff in the trial court, but few are discussed in her brief. Of those so pursued only the two following need be noticed: "If the jury find that the train that struck and killed the plaintiff's intestate was operated at such a high rate of speed for said time and place as to constitute negligence, and that such negligence was the sole and proximate cause of the death of the plaintiff's intestate, then the verdict must be for the plaintiff." "It was his [the engineer's] duty as well as the duty of all the other servants in charge of the said train to keep a constant watch for pedestrians or vehicles at or near the crossing, and he should not run his train at a greater rate of speed than was reasonable and consistent with the customary use of the crossing by the public with safety."

In charging the jury the trial judge said:—

"1. The railroad commissioners having legally ordered the whistle dispensed with for this crossing, the defendant cannot be held liable for its compliance with this order and its failure to blow this whistle for this crossing at the eighty rod point. The sole duty of the railroad with regard to general statutory signals was to ring its engine bell from the eighty rod point to the crossing.

"2. The absence of a flagman at this crossing, and of a crossing signal bell, or of gates, or of any other form of protection, does not constitute a ground of negligence, for which the defendant can be held liable, for the special designation by the statute of the whistle and bell signals excluded any obligation of providing other signals.

"3. These are all, however, circumstances which should have a bearing on the general situation, and may have operated to affect the duty of the engineer to keep a lookout for travelers, and the duty of Freedman to look out for trains.

"4. In addition to ringing or causing the bell to be rung, the engineer owed no other duty save in the case of ex-

ceptional circumstances which will be treated of later. The engineer owed the duty of keeping a reasonable outlook, which, in that connection, meant a vigilant outlook, for travelers upon the highway at or near the crossing so as to avoid injury to them, and if the railroad failed to perform its duty its liability is the same, whether it saw or might have seen the person in time, by the exercise of reasonable care, so as to have avoided the injury.

"5. Ordinarily the liability of a railroad cannot be found from speed alone, even though the speed be great, for negligence, as a general rule, cannot be inferred from speed alone. If the signals required by law are given, no liability to damage is attached to the railroad from the fact of the speed alone except in certain cases, which are exceptional cases, and the speed then becomes an important element in a charge of negligence. As, for instance, if the circumstances be exceptional, and known to the railroad, or the peril of the plaintiff's intestate was known to the defendant. Doubtless in some cases, as our courts say, the company might be liable for the neglect of the engineer to slacken the speed of his train if by doing so he might have avoided a collision. As, if he was informed that a person was approaching the crossing in such a condition or under such circumstances as to indicate that he was heedless of the danger signals; as, if other sounds were prevailing, as of a thunder storm, which might render the sound of the signals indistinguishable. In such cases, the company might properly be charged with the consequences of the personal negligence of the engineer.

"6. The claim is that the circumstances in evidence present an exceptional case, in that the engineer of the defendant either knew or ought to have known of the peril of the plaintiff's intestate, and might thereafter have avoided injury to Freedman had the engineer exercised reasonable care.

"7. If you find Freedman was in peril, and the engineer

knew or ought to have known it, then reasonable care required him to use every precaution to avoid the injury to Freedman which a reasonably prudent person, similarly situated, would use. If a reasonably prudent person would have, under these circumstances, blown the whistle or checked the speed, or stopped the train, it was incumbent upon the engineer to have done this; and if by so doing, injury to Freedman would not have occurred, the defendant is liable, unless Freedman's own negligence thereafter essentially contributed to his injuries. If the doing of any of these things, or of any other things, after the engineer knew or ought to have known of this peril, would not have avoided the injury to Freedman, the defendant cannot be held liable for its failure to have done them."

The statements contained in the paragraphs of the charge above marked 4, 5, 6, and 7 are among the reasons of appeal assigned.

During his charge the trial judge read and explained to the jury the following written interrogatories which he informed the jury the defendant had submitted, and which it would be necessary for them to answer.

"If you find the verdict for the plaintiff you will answer the following interrogatories:—

"1. Before the collision, was some part of an approaching train, consisting of an engine, tender and caboose, at all times visible from a point about six hundred feet south of the Brewster Street crossing up to the crossing, to a person on the seat of an ordinary open grocery wagon approaching from the east and within seventy-five feet of the crossing? 2. Did Freedman pull up his horse when close to the track and just before the collision? 3 Or did Freedman pull up his horse when some forty to sixty feet from the crossing? 4. Did Freedman know of the approach of the train while he was approaching the crossing and before he began to pull up his horse? 5. Did Freedman look for a train before he began to pull up his horse? 6. Did Freed-

man listen for a train before he began to pull up his horse? 7. Did Freedman, while approaching the crossing, drive his horse at a trot until he commenced to pull him up?"

The jury returned a verdict for the defendant without answering any of said interrogatories, and the plaintiff thereafter filed a motion in arrest of judgment on the grounds: " (1) Of the misconduct of the jury in failing to comply with the direction of the court to answer several certain questions or interrogatories submitted to them by the court with the direction that the same should be answered by the jury and returned to court when they returned their verdict in the above cause.   (2) In returning their verdict for the defendant without returning the answers to several certain interrogatories submitted to them by the court to be answered, in the event that they arrive at a verdict."

The court denied said motion.  The denial of said motion and the reading of said interrogatories to the jury, and the instructions given concerning them, are among the errors assigned in the appeal.

*Walter J. Walsh*, for the appellant (plaintiff).

*Harry G. Day* and *Thomas M. Steele*, for the appellee (defendant).

HALL, J.  The contention of the plaintiff, that the court instructed the jury, by the language of the first three lines of paragraph 4 of the charge as above numbered, that the engineer owed no other duty to the plaintiff than to ring the bell, cannot be supported.  It is clear from the context that in the statement complained of the court referred to the general statutory warnings.  In the same paragraph the court said it was the duty of the engineer to keep a "vigilant outlook for travelers upon the highway at or near the crossing, so as to avoid injury to them"; and in

paragraph 7 that it was incumbent upon him to blow the whistle, or check the speed of the train, if reasonable care required it, in view of the fact that he knew or ought to have known of the perilous position in which Freedman was placed. Whether after he learned, or should have learned, that Freedman was in peril, the engineer did all that a reasonably prudent person would have done to avoid the accident, was fairly submitted to the decision of the jury.

As applicable to the facts of this case, we find no error in the charge of the court or in its refusal to charge as requested, upon the question of the rate of speed of the train as an element of negligence. To transport persons and property rapidly is the principal purpose of railroads. To require railroads to generally so reduce their speed at all grade-crossings as to avoid collisions with persons who may, carelessly or accidentally, be upon the crossing when a train is approaching, would defeat, to a great extent, the purpose of the existence of railroads. To run trains over grade-crossings at a rate of speed reasonably necessary for the accomplishment of the purposes of railroads is always attended with danger. When using its trains for proper railroad purposes it is generally the right of a railroad company, in the absence of legislative restriction, to propel them over highway crossings in the way in which they are usually and reasonably run. Baldwin on American Railroad Law, 408. For the dangers necessarily resulting from so propelling them over grade-crossings, sanctioned by the State, the railroad company is not responsible. *Cowles* v. *New York, N. H. & H. R. Co.*, 80 Conn. 48, 54, 66 Atl. 1020. For the protection, to some extent, of others who may have occasion to use the highways at grade-crossings, the State has, through its legislature and railroad commissioners, assumed the regulation of the conditions upon which railroad companies may propel their cars over existing grade-crossings, by providing, among other things, what

signals of approaching trains shall be given (General Statutes, § 3787); that the railroad commissioners may order gates or electric signals, or a flagman, at any railroad crossing in any town, city or borough (§ 3888); that they may permit passenger trains to run past any highway crossing at such rate of speed as they may prescribe, and make orders for the regulation of the speed at which locomotives and cars shall cross highways (§§ 3798, 3893); and that they shall have the exclusive power to regulate the speed of railroad trains within the limits of cities and boroughs (§ 3894).

The evidence was that the train was running at from twenty-five to fifty miles an hour. The complaint alleges as an act of negligence that the rate of speed was high, unlawful and dangerous. It was dangerous, and it would have been if running at the lowest rate named. It was not unlawful in the sense that it was in violation of any order of the railroad commissioners, as it does not appear that they had fixed any rate of speed. The train was apparently run at that rate of speed, for proper railroad purposes. Upon the apparently undisputed facts the jury could not properly have found that the defendant was negligent in merely running its train over this crossing at the rate of speed named, in the absence of any restrictive order of the railroad commissioners. *Dyson* v. *New York & N. E. R. Co.,* 57 Conn. 9, 21, 17 Atl. 137; *Tessmer* v. *New York, N. H. & H. R. Co.,* 72 Conn. 208, 212, 44 Atl. 38; *Gillette* v. *Goodspeed,* 69 Conn. 363, 368, 37 Atl. 973.

In the first of these cases, this court held that the trial court erred in deciding that the defendant was negligent in running its cars over a city grade-crossing, unprotected by flagman, gate or bell, at a rate of speed of from thirty-five to forty miles an hour. In the second case it was held that the trial court committed no error in deciding that the railroad company was not negligent in running its train over a borough crossing, unprotected by flagman,

bell or gates, at a rate of speed of about fifty miles an hour. The crossings in both of the cases were dangerous, and as to affording opportunity to see approaching trains were evidently more dangerous than the one in the case at bar.

In the present case the trial court rightly and very clearly instructed the jury that they might find the defendant negligent, if they found that after the engineer knew or should have known that Freedman was in a position of peril, he failed to slacken the speed of the train or to blow the whistle when reasonable prudence and care required him to do so. Upon the facts before us, apparently the only reasonable grounds for a recovery by the plaintiff were that the engineer negligently failed either to keep a proper lookout in approaching this crossing, or to slacken the speed of the train sooner than he did. These questions of fact were fairly submitted to the jury and were by the verdict answered in the negative.

There was no error in denying the plaintiff's motion in arrest of judgment. Having returned a verdict for the defendant the jury were not required to answer the written interrogatories submitted to them. They were presented by the defendant only, and it appeared upon the face of the writing propounding them that they were to be answered only, in case the jury returned a verdict for the plaintiff. Presumably plaintiff's counsel knew this. If they desired to submit interrogatories, or to have those propounded by defendant answered, in case of a verdict for the defendant, they should have made such desire known before the verdict was rendered. If they understood the interrogatories were to be answered even in case of a verdict for the defendant, they should, when the verdict was returned without such answers,—assuming that the court might then properly have directed them to be answered,— have at least either requested the court to order them to be answered, or have objected to the acceptance of the verdict without the answers, instead of remaining silent until

after the jury was discharged. *Ward* v. *Busack*, 46 Wis. 407, 1 N. W. 107; *Mayo* v. *Halley*, 124 Iowa, 675, 100 N. W. 529; *Bagley* v. *Grand Lodge* of A. O. U. W., 131 Ill. 498, 22 N. E. 487.

But in their brief, counsel for the plaintiff make the claim, which is somewhat inconsistent with that made in their motion in arrest of judgment, that the trial court erred in submitting these interrogatories to the jury. No such question was raised in the trial court, although the plaintiff apparently had full opportunity to do so. In the absence of objection the plaintiff may be presumed to have assented to the submission of these questions. *Willard* v. *Stevens*, 24 N. H. 271, 276; *Allen, Cummings & Co.* v. *Aldrich*, 29 id. 63. Clearly the question of the power of the court to do so is not raised by the motion in arrest, which only complains of the failure of the court to direct the interrogatories to be answered. The only way in which it can be claimed to be raised by this appeal is by the assigned errors in the charge of the court in which it instructed the jury regarding the answering of the interrogatories.

But as the right of parties to present such interrogatories, and the power and duty of courts to submit them to the jury, are important matters of practice, which have never been passed upon by this court, we shall consider these questions as if they were properly raised by the appeal.

Unlike a large number of our States, the statutes of which upon this subject are discussed by Mr. Clementson in his "Manual Relating to Special Verdicts and Special Findings by Juries," p. 24, Chap. 3, Connecticut has never by express legislation either regulated or authorized the submission of such interrogatories to juries in the trial of cases. Section 757 of the General Statutes authorizes a special verdict by which the jury may find the facts and refer the questions of law to the determination of the

court. Though they may to some extent both subserve the same purpose, there is still a material difference between special verdicts and findings by responses to interrogatories. By the former no unconditional general verdict is rendered, but the jury find the facts and submit the question of law arising upon them to the court. 1 Swift's Dig. s. p. 774. By the latter, answers pertinent to, and perhaps controlling, although not necessarily fully covering, an issue framed, are given, always in connection with a general verdict. Clementson on Special Verdicts, 45. The purpose of the former is to furnish the basis of a judgment to be rendered, and of the latter, by eliciting a determination of material facts, to furnish the means of testing the correctness of the verdict rendered, and of ascertaining its extent. *First National Bank* v. *Peck*, 8 Kan. 660; *Chicago & N. W. Ry. Co.* v. *Dunleavy*, 129 Ill. 132, 22 N. E. 15; *Durfee* v. *Abbott*, 50 Mich. 479, 15 N. W. 559.

The power of the trial court to submit proper interrogatories to the jury, to be answered when returning their verdict, does not depend upon the consent of the parties or the authority of statute law. In the absence of any mandatory enactment, it is within the reasonable discretion of the presiding judge to require or to refuse to require the jury to answer pertinent interrogatories, as the proper administration of justice may require. *Dorr* v. *Fenno*, 12 Pick. (Mass.) 521; *Spaulding* v. *Robbins*, 42 Vt. 90. In *Walker* v. *New Mexico & So. Pac. R. Co.*, 165 U. S. 593, 597, 17 Sup. Ct. Rep. 421, Justice Brewer, in delivering the opinion of the court, said: "The putting of special interrogatories to a jury and asking for specific responses thereto in addition to a general verdict is not a thing unknown to the common law, and has been recognized independently of any statute." It has been for a long period the settled practice in the courts of our sister New England States to propound such interrogatories to the jury, although Rhode Island is, we believe, the only one of them in which the

practice has been sanctioned by statute. Clementson on Special Verdicts, p. 16, Chap. 2. In *Newell* v. *Roberts*, 13 Conn. 63, 73, the defendant pleaded four defenses, upon each of which issue was joined. There was a general verdict for the defendant, under the instruction of the court that the jury might return such verdict upon finding a certain fact. This court, by WILLIAMS, C. J., said that while it was not prepared to say that the verdict would not do entire justice to the parties in the case, it might, in its consequences, injuriously affect their rights beyond that suit, and that the parties had a right to an expression of the triers upon each of the distinct points so in issue. In *Frazier* v. *Harvey*, 34 Conn. 469, 470, which was an action on a warranty, with the common counts in assumpsit, a general verdict for the plaintiff having been returned, the court inquired of the jury if they found the warranty proved. They replied that they did not. A new trial was granted upon the ground that there could be no recovery upon the common counts, and there was no criticism of the action of the court in so interrogating the jury. It has been the common practice in this State, when a complaint contains several counts for distinct causes of action, for the court to direct the jury, in case of a verdict for the plaintiff, to designate upon which count it was found. *Morris* v. *Bridgeport Hydraulic Co.*, 47 Conn. 279, 291; *Spencer* v. *New York & N. E. R. Co.*, 62 id. 242, 251, 25 Atl. 350. In *Johnson* v. *Higgins*, 53 Conn. 236, 241, 1 Atl. 616, the court, by STODDARD, J., said: "The practice obtains generally in this State rather to direct the jury to return verdicts upon each of several distinct counts embracing independent matters, than to obtain the required information by inquiry of the jury, or by framing special verdicts, although both of the two latter modes have been resorted to."

While we cannot expect from a jury such a special finding, as may be required of a court, of the facts upon which

its judgment is founded, it is feasible and often necessary, and especially as affording the basis of a possible appeal where generally every intendment is in support of the verdict, that some of the elements which enter into the verdict may appear upon the record. *Carroll* v. *Bohan*, 43 Wis. 218. For this purpose the presiding judge has the power to submit written interrogatories to be answered by the jury upon returning a general verdict. When and to what extent this should be done, and when and how counsel may request interrogatories to be propounded, is, to a great extent, in the absence of any statute or rule upon the subject, the duty of the trial court in the exercise of a reasonable discretion to determine. *Nudd* v. *Burrows*, 91 U. S. 426, 439; *Spurr* v. *Inhabitants of Shelburne*, 131 Mass. 429.

We shall not attempt to formulate definite rules for determining accurately in every case just what interrogatories may be so submitted to the jury. It may, however, be well to state the following, as some of the general requisites of such permissible interrogatories: They should generally be few in number, and never so numerous as to confuse or perplex the jury in rendering their verdict. They should be so clear and concise as to be readily understood and answered by the jury. Each question should call for a finding of but a single fact. When practicable each question should be so framed as to call for a categorical answer. Each question should ask for the finding of a fact and never for a conclusion of law. No question should ask for the finding of a purely evidential fact nor of an uncontroverted fact. Although not wholly covering, nor necessarily controlling, the determination of any issue framed, the fact sought to be elicited must be pertinent to some issue, and one which may be of material weight in deciding it. No interrogatory should be permitted, the response to which cannot serve either to limit or explain a general verdict, or aid in proceedings for a subsequent review of the verdict or judgment which may be rendered.

We do not find it necessary to decide whether the seven questions propounded conform to the principles above stated. It is sufficient to say that we find nothing in them to justify the conclusion that the necessity of answering them, had they rendered a verdict for the plaintiff, may have induced the jury to return a verdict for the defendant.

There is no error.

In this opinion the other judges concurred.